RECEIVED
IN MONROE, LA
AUG 5 - 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| GULF CROSSING PIPELINE COMPANY LLC | CIVIL ACTION NO. 08-689 |
| VERSUS | JUDGE JAMES |
| VARIOUS ACRES OF LAND, MORE OR LESS, SITUATED IN CADDO, BOSSIER, CLAIBORNE, UNION, OUACHITA, MOREHOUSE, RICHLAND, AND MADISON PARISHES, LOUISIANA | MAGISTRATE JUDGE HAYES |

### MEMORANDUM RULING

This matter came on for hearing on August 5, 2008, on the second motion of plaintiff Gulf Crossing Pipeline Company LLC ("Gulf Crossing") to confirm the right to condemn and for immediate possession of certain natural gas pipeline servitudes and rights of way. [Doc. No. 84] The Court, having considered the motion, supporting memorandum, witnesses' testimony, and evidence presented at the hearing, as well as the arguments of counsel, finds that the motion is well founded and should, therefore, be **GRANTED** for the reasons set forth below:

### I. PARTIES

Plaintiff Gulf Crossing is a Delaware limited liability company whose principal place of business is 9 Greenway Plaza, Suite 2800, Houston, Texas 77046. Gulf Crossing is registered to do business in the State of Louisiana. Gulf Crossing was created to engage in the transportation of natural gas in interstate commerce and is, therefore, a natural-gas

company within the meaning of the Natural Gas Act, 15 U.S.C. § 717-717z. This is an in rem action by Gulf Crossing, pursuant to 15 U.S.C. § 717f(h) and Federal Rule of Civil Procedure 71.1, for the condemnation of natural gas pipeline servitudes and rights of use across various tracts of land located in Claiborne, Morehouse, Richland, and Madison, and Caddo Parishes, Louisiana. The defendants are tracts of land, individuals, and other entities, which have or may have ownership interests in those tracts of land. Pursuant to Federal Rule of Civil Procedure 71.1(b), Gulf Crossing has joined separate pieces of property in a single action.

## II. JURISDICTION AND VENUE

The court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 717f(h)(the Natural Gas Act). Pursuant to 28 U.S.C. § 717f(h), with respect to each tract of land at issue, the amount claimed by the owners for the property rights to be condemned herein exceeds $3,000.00. Pursuant to 28 U.S.C. § 1391(a)(b)(2), venue is proper in the Western District of Louisiana, ~~Monroe Division,~~ because the Property is located therein.

## III. THE PIPELINE

Gulf Crossing was created for the purpose of receiving, transporting, and delivering natural gas to various users. The natural gas to be transported by Gulf Crossing will ultimately be used by local distribution companies, electric generators, and other residential and commercial users of natural gas. Gulf Crossing's natural gas pipeline will connect with

other major interstate natural gas pipeline networks serving the Northeast, Midwest, and Southeast United States. As an interstate natural gas pipeline company, Gulf Crossing is regulated by the Federal Energy Regulatory Commission ("FERC"). See 15 U.S.C. § 717f. On June 19, 2007, pursuant to Section 7(c) of the Natural Gas Act, 15 U.S.C. § 717f, Gulf Crossing filed an application for a certificate of public convenience and necessity with FERC (docket numbers CP07-398-000, CP07-398-001, CP07-399-000, and CP07-4000-000) to construct, own, and operate approximately 353.2 miles of new natural gas pipeline and appurtenant auxiliary facilities, extending from a point near Sherman, Texas, to existing natural gas pipeline interconnects near Tallulah, Madison Parish, Louisiana (hereinafter referred to as the "Pipeline"). When completed, the Pipeline will transport additional supplies of up to 1.732 Bcf per day of natural gas primarily from the prolific Barnett Shale, Caney Woodford Shale, and other production areas in Texas and Southeast Oklahoma to markets in the Midwestern, Northeastern, and Southeastern United States, including those in Louisiana. The estimated capital cost of the Pipeline is $1,470,029,646.00. On March 21, 2008, FERC issued a Final Environmental Impact Statement, designating and approving the Pipeline's proposed route. On April 30, 2008, FERC entered an order, issuing Gulf Crossing a certificate of public convenience and necessity and authorizing it to construct, operate, and maintain the Pipeline, with an in-service date of no later than April 30, 2009. On May 1, 2008, Gulf Crossing accepted the terms and conditions set forth in FERC's order. Gulf Crossing has entered into binding commitments with various pipeline construction companies to build the Pipeline, with construction having commenced on or about June 1, 2008. Because of the dramatic spike in demand for pipeline infrastructure, Gulf Crossing is not aware of any other pipeline

construction companies, which have the necessary equipment, manpower, and availability to construct and have the Pipeline in service no later than April 30, 2009, the deadline imposed by FERC. Gulf Crossing has already acquired the vast majority of the servitudes and rights of way necessary to construct, operate, and maintain the Pipeline through voluntary purchase agreements with the affected landowners.

## IV. GULF CROSSING IS ENTITLED TO EXERCISE THE RIGHT OF EMINENT DOMAIN

The Pipeline will cross the tracts of land identified in the Appendix to the accompanying Judgment. In order timely to construct and place the Pipeline in service and to operate and maintain the same, Gulf Crossing must acquire the following property rights with respect to each tract of land at issue:

(a) A permanent pipeline servitude/right of way, as described and depicted in the Appendix to the accompanying Judgment, along with all of the rights and privileges reasonably necessary for Gulf Crossing to construct, operate, and maintain the Pipeline, including, but not limited to, the right of ingress and egress to and from the Pipeline, which includes the use of any existing roads (hereinafter referred to as the "Permanent Servitude") and

(b) The right to use a strip of land, running adjacent to and parallel with the Permanent Servitude and other areas necessary for construction, as described and depicted in the Appendix to the accompanying Judgment, during initial construction and installation of the Pipeline and the necessary appurtenances thereto, along with all of the rights and privileges reasonably necessary for Gulf Crossing to construct and install the Pipeline, including, but not limited to, the right of ingress and egress to and from the Pipeline, which includes the use of any existing roads (hereinafter referred to as the "Temporary Workspace"). After such initial construction and

> installation of the Pipeline and the necessary appurtenances thereto, the right to use the Temporary Workspace shall terminate.

Gulf Crossing has not been able to reach voluntary agreements with the owners of the tracts at issue for the acquisition of the necessary property rights to construct, operate, and maintain the Pipeline. Pursuant to the power granted it by 15 U.S.C. § 717f(h) and the aforementioned certificate of public convenience and necessity, Gulf Crossing has properly exercised its right of eminent domain in the United States District Court in which the subject tracts of land are located and, with respect to each affected tract of land, is entitled to condemn the Permanent Servitude and the Temporary Workspace in connection with its right to construct, operate and maintain the Pipeline. Gulf Crossing's right to condemn, on a tract by tract basis, the Permanent Servitude and the Temporary Workspace is for a public and necessary purpose and is hereby confirmed.[1]

---

[1] In Transcontinental Gas Pipe Line Corp. v. 118 Acres of Land, 745 F. Supp. 366, 369 (E.D. La. 1990), the court explained:

> Under federal law, the legislative and administrative determinations of public purpose and necessity are rarely overturned by the courts. See Berman v. Parker, 348 U.S. 26, 75 S. Ct. 98 (1954). A federal court should give presumptive weight to a FERC certificate and leave the inquiry into the public purpose and necessity to the legislative and administrative arm of the government. The United States Court of Appeal for the Fifth Circuit has noted that the courts have no jurisdiction to review the legislative or administrative discretion as to the extent of the right, interest or estate in property to be taken. See Swan Lake Hunting Club v. United States, 381 F.2d 238, 241, fn.4 (5th Cir. 1967).
>
> FERC has exclusive regulatory jurisdiction over the transportation of natural gas in interstate commerce. In exercising that jurisdiction, FERC decided that [the subject project] would serve the public convenience and necessity . . . .

## V. IMMEDIATE POSSESSION

### A. Immediate Possession Is Available In A Condemnation Action Under The Natural Gas Act Upon A Well-Founded Motion For A Preliminary Injunction.

Gulf Crossing has filed a motion, pursuant to Federal Rule of Civil Procedure 65(a), for immediate possession of the property rights at issue. The overwhelming majority of courts which have addressed the issue have held that immediate possession is available in a condemnation action under the Natural Gas Act upon a well-founded motion for a preliminary injunction.[2] For instance, in East Tennessee Natural Gas Co. v. Sage, 361

---

> Since FERC is the regulatory agency with the expertise to make a determination as to the necessity of [the project], the court finds that it should not attempt to second guess FERC with regard to [the same]. Moreover, the court notes that review of FERC orders are to be made only to United States Circuit Courts of Appeal. See 15 U.S.C. § 717r. The proper procedural vehicle for [the landowner] to question the necessity for [the project] is to seek modification of the FERC certificate, and not to challenge the FERC decision in this court.

Id. at 372. See also Williams Natural Gas Co., v. City of Oklahoma City, 890 F.2d 255, 261 & 266 (10th Cir. 1989), cert. denied, 497 U.S. 1003, 110 S. Ct. 3236 (1990)(holding that issues such as pipeline placement, routing and necessity, which could be raised in an FERC administrative proceeding or an appeal thereof, can only be addressed under the federal scheme for review); Florida Gas Transmission Co. v. An Approximately 9.854 Acre Natural Gas Transmission Pipeline Easement, No. 96-14083 (S.D. Fla. 6/15/98), 1998 WL 2018164 (same); East Tennessee Natural Gas, LLC v. 1.28 Acres in Smyth County, Virginia, Nos. 06-022, 06-028, 06-029, 06-036, 06-037 & 06-044 (W.D. Va. 4/26/06), 2006 WL 1133874, *10 (same); East Tennessee Natural Gas, LLC v. 3.62 Acres in Tazewell County, Virginia, Nos. 06-28 & 06-29 (W.D. Va. 5/18/06), 2006 WL 1453937 (same).

[2]Typically, in a federal condemnation action under Rule 71.1, the condemnor does not take possession of the property at issue until after the determination, by a trial on the merits, of the issue of just compensation. See Kirby Forest Industries, Inc. v. United States, 467 U.S. 1, 4, 104 S. Ct. 2187, 2191 (1984)("The practical effect of final judgment on the issue of just compensation is to give the [condemnor] an option to buy the property at the adjudicated price"). However, Rule 71.1, itself implicitly recognizes the availability of

F.3d 808 (4th Cir.), cert. denied, 543 U.S. 978, 125 S. Ct. 478 (2004) – the leading case on the issue – the East Tennessee Natural Gas Company ("ETNG") obtained authorization from FERC to build a 94-mile natural gas pipeline through parts of Tennessee, North Carolina, and Virginia; filed a condemnation action under the Natural Gas Act in federal court to acquire the necessary property rights it could not obtain voluntarily; and sought immediate possession of the same. Id. at 818. The United States Fourth Circuit Court of Appeal held that "once a district court determines that a gas company has the substantive right to condemn property under the [Natural Gas Act], the court may exercise equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction." Id. at 828. In so holding, the court stated:

> In summary, the district court followed established principles of equity in determining that it had the power to award preliminary injunctive relief to ETNG in the form of immediate possession. Neither the Constitution, nor Congress, nor Rule [71.1] bars this sort of relief in a condemnation case. In this case, the public interest factor – the need for natural gas in a region with little or no service – made it especially appropriate for the district court to consider equitable relief that would allow expeditious construction of the pipeline. A number of district courts around the country have also determined that they have the equitable power to grant immediate possession to a gas company filing a condemnation action under the [Natural Gas Act]. We agree with this position.

Id. The court was, however, careful to predicate the availability of preliminary injunctive relief on the resolution by the district court of the threshold issue of whether the

---

other remedies. See Fed. R. Civ. Proc. 71.1(a)("The Rules of Civil Procedure for the United States District Courts govern the procedure for the condemnation of real and personal property under the power of eminent domain, except as otherwise provided in this rule").

condemnor, in fact, has the substantive right to condemn under the Natural Gas Act. Id. at 827-28.[3]

The procedure set forth in Sage represents the approach taken by virtually every federal court that has considered the issue, including this one. See Southeast Supply Header LLC v. Various Defendants, Nos. 07-1664, 07-1938, 07-1939, 07-1940, 07-1941, 07-2001, 07-2004, 07-2005, 07-2010, 07-2109, 07-2110, 07-2111, 07-2014, 07-2016, 07-2030, 07-2134, 07-2137, 07-2138, 07-2139, 07-2176, & 07-2194, United States District Court for the Western District of Louisiana, Monroe Division (granting natural gas pipeline's motion to confirm right to condemn and for immediate possession under similar circumstances). See also Southeast Supply Header LLC v. 180 Acres in George County, Mississippi, No. 07-280 (S.D. Miss. 1/9/08)(same).[4]

---

[3]The only other appellate-level decision on the issue is Northern Border Pipeline Co. v. 86.72 Acres of Land, 144 F.3d 469 (7th Cir. 1998), which the Fourth Circuit distinguished in Sage. Very few courts have relied on Northern Border as the basis to deny a motion for immediate possession in a condemnation action under the Natural Gas Act. In fact, as is noted in Sage, two district court decisions out of the Seventh Circuit subsequent to Northern Border have granted motions for immediate possession, holding that the case merely predicates the availability of such an equitable remedy on a finding by the court that the condemnor does, in fact, have the substantive right to take the property.

[4]See also Northern Border Pipeline Co. v. 64.111 Acres of Land, 125 F. Supp. 2d 299, 301 (N.D. Ill. 2000)(granting motion for immediate possession); Vector Pipeline, L.P. v. 68.55 Acres of Land, 157 F. Supp. 2d 949 (N.D. Ill. 2001)(same); Guardian Pipeline, L.L.C. v. 950.80 Acres of Land, 210 F. Supp. 2d 976, 979 (N.D. Ill. 2002)(same); ANR Pipeline Co. v. Acres of Land, No. 03-50348 (N.D. Ill. 2004), 2004 WL 421527 (observing that the Fifth Amendment does not require that compensation be paid before possession is taken); Tennessee Gas Pipeline Co. v. New England Power, 6 F. Supp. 2d 102, 104 (D. Mass. 1998) (granting motion for immediate possession so that FERC-imposed construction deadlines could be met); Northwest Pipeline Corp. v. Ross, No. 05-1605 (W.D. Wash. 10/14/05), 2005 WL 2656587 (granting motion for immediate possession); Northwest Pipeline Co. V. The 20' x 1,430' Pipeline, 197 F. Supp. 2d 1241 (E.D. Wash. 2002)(same); Columbia Gas Transmission Corp. v. An Easement, No. 05-2895 (E.D. Penn. 2/16/06), 2006 WL 401850 (same); Portland Natural Gas Transmission System v. 4.83

In Guardian Pipeline, LLC v. 295.49 Acres of Land, Nos. 08-28, 08-29, & 08-30 (E.D. Wis. 4/11/08) – the most recent decision to apply Sage and one that is procedurally identical to the instant suit – an interstate natural gas pipeline company brought a consolidated action pursuant to Rule 71.1 against 190 parcels of land, seeking to condemn the necessary easements to construct a new interstate natural gas pipeline in Wisconsin. Id. at *4. Like in Sage, the pipeline company filed a motion to confirm its right to condemn and for immediate possession. Id. at *11-24. Rejecting the landowners' various objections, the court explained that the pipeline company's FERC certificate of public convenience and necessity was virtually conclusive with respect to the right to condemn. Id. at *22. Having confirmed the right to condemn, the court went on to find that the pipeline company had satisfied the standard for injunctive relief and was, therefore, entitled to immediate possession of the 190 pipeline easements at issue. Id. at *21-24. See also Northern Border Pipeline Co. v. 127.79 Acres of Land, 520 F. Supp. 170 (D.N.D. 1981); Kern River Gas Transmission Co. v. Clark County, Nevada, 757 F. Supp. 1110, 1116 (D. Nev. 1990); USG Pipeline Co. v. 1.74 Acres in Marion County, Tennessee, 1 F. Supp. 2d 816 (E.D. Tenn.1998).

Accordingly, in a condemnation action under the Natural Gas Act, once the condemnor's right to condemn has been recognized by the court, the equitable remedy of immediate possession is available if the condemnor can otherwise satisfy the criteria for preliminary injunctive relief. As demonstrated below, Gulf Crossing is entitled to immediate

---

Acres of Land, 26 F. Supp. 2d 332, 336 (D.N.H. 1998)(same); Williston Basin Interstate Pipeline Co. v. Easement and Right-of-Way Across .152 Acres of Land, No. 03-66 (D.N.D. 6/3/03), 2003 WL 21524816 (same); Humphries v. Williams Natural Gas Co., 48 F. Supp. 2d 1276 (D. Kan.1999)(same).

possession of the property rights at issue.

## B. Gulf Crossing Is Entitled to Immediate Possession of the Property Rights At Issue.

As established above, in a condemnation action under the Natural Gas Act, the equitable remedy of immediate possession is available if the condemnor can satisfy the criteria for preliminary injunctive relief. In the Fifth Circuit, a four-factor test applies for determining whether a motion for a preliminary injunction should be granted. See Tesfamichael v. Gonzales, 411 F.3d 169, 172 (5th Cir. 2005). Thus, the movant has the burden of proving each of the following:

(1) a substantial likelihood that the movant will prevail on the merits;

(2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted;

(3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the injunction; and

(4) that the granting of the injunction will not disserve the public interest.

Id. Gulf Crossing has established each of these prerequisites for injunctive relief.

### (1) A Substantial Likelihood of Success on the Merits.

*First*, in order to obtain a preliminary injunction, the movant must show that there is a substantial likelihood that the movant will prevail on the merits. See Wireless Agents, L.L.C. v. Sony Ericsson Mobile Communications AB, 390 F. Supp. 2d 532 (N.D. Tex. 2005). As established above, Gulf Crossing has the substantive right under the Natural

Gas Act to condemn the subject property rights. Accordingly, the Court finds this prerequisite for injunctive relief is satisfied. See Guardian Pipeline, LLC v. 295.49 Acres of Land, Nos. 08-28, 08-29, & 08-30 (E.D. Wis. 4/11/08)(holding that a FERC certificate of public convenience and necessity is conclusive); Southeast Supply Header LLC v. 180 Acres in George County, Mississippi, No. 07-280 (S.D. Miss. 1/9/08)(same); Columbia Gas Transmission Corp. v. An Easement, No. 05-2895 (E.D. Penn. 2/16/06), 2006 WL 401850, *3 ("[Condemnor] is likely to succeed on the merits of its condemnation claim because it holds a certificate of public convenience and necessity from FERC").

### (2) A Substantial Threat of Irreparable Injury.

*Second*, in order to obtain a preliminary injunction, the movant must plead and show that there is a substantial likelihood that the movant or others will suffer irreparable harm in the absence of such relief. See Danden Petroleum, Inc. v. Northern Natural Gas Co., 615 F. Supp. 1093, 1098-99 (N.D. Tex. 1985)("When examining the second prong of the test, it is not so much the magnitude of the harm claimed by [the movant], but the irreparability that counts for purposes of a preliminary injunction"). The Court finds that Gulf Crossing, its customers, and the public at large will be irreparably harmed if Gulf Crossing is not placed in immediate possession of the subject property rights. Specifically, the Court finds:

- Gulf Crossing has entered into binding commitments with various pipeline construction companies, including Sheehan Pipeline Construction Company; U.S. Pipeline, Inc.; Gregory and Cook Construction, Inc.; Rockford, Corp.; and H.C. Prince Company (hereinafter collectively referred to as the "Constructors"), to build the Pipeline;

- Due to the high demand for natural gas and the shortage of natural gas infrastructure, there has been a

tremendous increase in the construction of natural gas pipeline projects;

- Consequently, there is a severe shortage of pipeline contractors with the necessary manpower and equipment to construct a 42-inch diameter natural gas pipeline, such as has been undertaken by Gulf Crossing;

- Under Gulf Crossing's contracts with the Constructors, construction of the Pipeline commenced on or about June 1, 2008, and is scheduled to take approximately four to five months, with an expected in-service date of approximately December 1, 2008, in time for the 2008-09 winter heating season;

- Due to the extreme construction, labor, and equipment shortages and but for this single window of opportunity, Gulf Crossing is not aware of any other pipeline construction company or companies, other than the Constructors, which have the necessary equipment, manpower, and availability to construct and have the Pipeline in service in time for the 2008-09 winter heating season and within the FERC-mandated deadline of April 30, 2009;

- The Constructors have been awarded other pipeline construction contracts. In the event of a delay beyond the scheduled construction commencement date of June 1, 2008, the Constructors may be forced to move their labor and equipment to other locations to meet other contractual obligations;

- Constructing the Pipeline will be a complex undertaking, involving a variety of specialized subcontractors and approximately 3,000 construction personnel. To construct the Pipeline in a timely and efficient manner, construction must progress sequentially and continuously across five different spreads. Accordingly, the Constructors require that Gulf Crossing provide free and unrestricted access to the entire right of way during the construction period. No allowance is made by the Constructors in their pricing for delays or "movearounds" necessitated by the lack of the

necessary rights of way. If the Constructors are required to "movearound" a certain tract because Gulf Crossing is not in possession of the necessary right of way, then substantial penalty charges and delays are incurred;

- For each "movearound" the Constructors may charge Gulf Crossing a contractual penalty in excess of $300,000.00 per location;

- In order timely to construct and place the pipeline in service for the 2008-09 winter heating season and within the FERC-mandated deadline, Gulf Crossing must acquire immediate possession of the pipeline servitudes and rights of way at issue;

- To date, Gulf Crossing has sold in excess of 1.4 Bcf per day of natural gas pipeline capacity on the Pipeline to various natural gas producers operating in the foregoing areas, with such capacity scheduled to be operational, no later than December 1, 2008, or Gulf Crossing will face late in-service penalties;

- Without immediate possession, Gulf Crossing's upstream customers (i.e., natural gas producers) would face irreparable harm because they would not be able to get an additional incremental supply of up to 1.732 Bcf of natural gas per day to the national market in time for the 2008-09 winter heating season, effectively "shutting in" the natural gas and causing them a substantial loss of revenue;

- Without immediate possession, Gulf Crossing's downstream customers (i.e commercial purchasers of natural gas in Louisiana and beyond) and other end users of Gulf Crossing's natural gas pipeline capacity, including residential and other consumers of natural gas, would face irreparable harm because they would be deprived of this additional incremental supply of natural gas; and

- Without immediate possession, Gulf Crossing would face irreparable harm, including escalating construction delay penalties under its contracts with the Constructors

-13-

> in excess of $1,000,000.00 per construction spread; "movearound" penalties as set forth above; lost revenues of approximately $8,000,000.00 per month; and potentially significant re-application delays and costs.

In light of the foregoing – including, but not limited to the FERC-mandated in-service deadline – the Court finds that there is a substantial threat of irreparable injury if Gulf Crossing's motion for immediate possession is not granted. See Guardian Pipeline, LLC v. 295.49 Acres of Land, Nos. 08-28, 08-29, & 08-30 (E.D. Wis. 4/11/08), *22 (finding irreparable harm where delay would result in substantial additional costs to condemnor and potentially could preclude it from meeting FERC-imposed in-service deadline for project); Southeast Supply Header LLC v. 180 Acres in George County, Mississippi, No. 07-280 (S.D. Miss. 1/9/08), *3 (finding irreparable harm to condemnor, public utility providers, and the public at large if project was not completed timely); Tennessee Gas Pipeline Co. v. New England Power, 6 F. Supp. 2d 102, 104 (D. Mass. 1998)(same); East Tennessee Natural Gas, LLC v. 1.28 Acres in Smyth County, Virginia, Nos. 06-022, 06-028, 06-029, 06-036, 06-037 & 06-044 (W.D. Va. 4/26/06), 2006 WL 1133874, *13 (same); East Tennessee Natural Gas, LLC v. 3.62 Acres in Tazewell County, Virginia, Nos. 06-28 & 06-29 (W.D. Va. 5/18/06), 2006 WL 1453937, *14 (same).

### (3) The Balance of Hardships Favor Injunctive Relief.

*Third*, in order to obtain a preliminary injunction, the movant must show that the injury faced by the movant outweighs the injury that would be sustained by the defendant as a result of injunctive relief. As recognized by the court in East Tennessee Natural Gas Co. v. Sage, 361 F.3d 808 (4th Cir.), cert. denied, 543 U.S. 978, 125 S. Ct. 478 (2004), in a

condemnation proceeding under the Natural Gas Act, any hardship to the landowner caused by immediate possession is "slight at best," especially when the landowner has the right to draw down the money deposited by the condemnor into the registry of the court. Id. at 829.[5] Moreover, any claim by the landowner that immediate possession will somehow prejudice his claim for just compensation, has been rejected by the courts. Id. ("This argument is unconvincing because the Fifth Amendment guarantees the landowners just compensation for their land no matter when the condemnor takes possession"). Finally, the courts are generally unpersuaded by landowners' other claims of hardship related to statutorily-authorized takings. Id. ("The Supreme Court long ago recognized that in view of the liability of all property to condemnation for the common good, loss to the owner of nontransferable values deriving from his unique need for property or idiosyncratic attachment to it is properly treated as part of the burden of common citizenship")(citation and quotations omitted). Accordingly, the court finds that any harm to the defendants is clearly outweighed by Gulf Crossing's immediate need for the property. Id. See also Guardian Pipeline, LLC v. 295.49 Acres of Land, Nos. 08-28, 08-29, & 08-30 (E.D. Wis. 4/11/08), * 23 ("Granting [the pipeline company's] motion . . . . and allowing immediate

---

[5]Pursuant to Federal Rules of Civil Procedure 65(c), 67, and 71.1(j), Gulf Crossing has deposited into the registry of the court an amount that represents the sum of (a) the last offers made to the defendants, on a tract by tract basis, where the defendants and their interest are known and, (b) where the defendants are not known or are absentees, the amount of estimated just compensation due and payable, on a tract by tract basis, for the property rights. Gulf Crossing contends all amount deposited are in excess of the fair market value of the property rights in question. See also Northwest Pipeline Corp. v. Ross, No. 05-1605 (W.D. Wash. 10/14/05), 2005 WL 2656587, *2 (granting motion for immediate possession upon condemnor posting bond in the amount of its highest written offers to landowner-defendants); Guardian Pipeline, L.L.C. v. 950.80 Acres of Land, 210 F. Supp. 2d 976, 979 (N.D. Ill. 2002)(same).

possession of the land needed to construct the pipeline will not appreciably harm the interest of the landowners"); Southeast Supply Header LLC v. 180 Acres in George County, Mississippi, No. 07-280 (S.D. Miss. 1/9/08), *3 ("On balance, the potential harm to [the pipeline company] and the public at large outweighs any harm to the defendants by granting [the pipeline company] the injunction it seeks");

### (4) Injunctive Relief Does Not Disserve the Public Interest.

*Fourth*, in order to obtain a preliminary injunction, the movant must show that the granting of preliminary injunctive relief would not adversely affect public policy or the public interest. See DSC Communications Corp. v. DGI Technologies, 81 F.3d 597, 600 (5th Cir. 1996). When discussing this factor, the movant may have to address the impact of the injunctive relief on non-parties. See Sammartano v. First Judicial District Court, 303 F.3d 959, 974 (9th Cir. 2002). The Court finds that the expeditious completion of the Pipeline is in the public interest because it is consistent with the rationale and basis for FERC's certificate of public convenience and necessity. Moreover, the Court finds that the Pipeline, if timely constructed, will increase the overall supply of natural gas available for distribution to the public for the 2008-09 winter heating season, providing downward pressure on natural gas prices. See Guardian Pipeline, LLC v. 295.49 Acres of Land, Nos. 08-28, 08-29, & 08-30 (E.D. Wis. 4/11/08), *23 ("Denying [the pipeline company's] motion would also operate against the public interest, potentially limiting the natural gas available to citizens of the region in which the pipeline is to run, and/or contributing to already high natural gas prices"); Southeast Supply Header LLC v. 180 Acres in George County, Mississippi, No. 07-280 (S.D. Miss. 1/9/08), *4 ("[T]he court find that the grant of injunctive

relief to permit [the pipeline company] to begin construction of the project prior to the determination of just compensation furthers the public interest in that it will aid in ensuring that the FERC-approved project will not be delayed"); Florida Power and Light Co. v. FERC, 598 F.2d 370, 379 (5th Cir. 1979)("It is well established . . . that the overall purpose of the Natural Gas Act is to protect the interest of consumers in an adequate supply of gas and at reasonable rates"). Finally, the Court finds that granting immediate possession of the property rights at issue to Gulf Crossing will further the public interest in that it will aid in ensuring that the FERC-approved Pipeline will not be delayed.

## VI. CONCLUSION

Based on the foregoing, Gulf Crossing's Second Motion to Confirm the Right to Condemn and For Immediate Possession of the property rights at issue is **GRANTED**.

In due course, the Court will set a trial or trials on the issue of the just compensation to be paid by Gulf Crossing, on a tract by tract basis, to the defendants, and after the same, enter judgment(s), vesting full ownership and title of the subject property rights in Gulf Crossing upon the payment of the just compensation into the registry of the court.

**THUS DONE AND SIGNED** in Monroe, Louisiana, on this the 5 day of August, 2008.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE